Robert B. Salgado, Esq. (SBN 297391)
**COUNTERPOINT LEGAL**
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 780-3303
Facsimile: (619) 344-0332
Email: rsalgado@counterpointfirm.com

Attorneys for Plaintiff and Putative Class

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEBRALINE GROUP, LLC, a California corporation, and MORGAN ROSS, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OPENAI L.P., a Delaware Limited Partnership and MIXPANEL, INC., a Delaware Corporation, <br><br> Defendants | Case No.: _____ <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:** <br> 1. NEGLIGENCE <br> 2. NEGLIGENCE PER SE <br> 3. INVASION OF PRIVACY / INTRUSION UPON SECLUSION <br> 4. BREACH OF CONTRACT <br> 5. BREACH OF IMPLIED CONTRACT <br> 6. BREACH OF CONFIDENCE <br> 7. UNJUST ENRICHMENT <br> 8. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.) <br><br> **JURY TRIAL DEMANDED** |

# INTRODUCTION

Plaintiffs ZEBRALINE GROUP, LLC and MORGAN ROSS ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through Plaintiffs' undersigned counsel, bring this class action lawsuit against OPENAI L.P. and MIXPANEL, INC. ("Defendants" or "OpenAI" or "Mixpanel") and allege, based upon information and belief and the investigation of Plaintiffs' counsel, as follows:

# NATURE OF THE ACTION

1. This is a class action arising from a data security incident in which an unauthorized actor accessed Mixpanel, Inc.'s ("Mixpanel") systems and exported datasets relating to Mixpanel's customers, including OpenAI, L.P. ("OpenAI"). As a result, personal and analytics data associated with Plaintiff's OpenAI API account—including name, email address, approximate location, browser and operating system, referring websites, and OpenAI user and/or organization identifiers—was exported from Mixpanel's systems without authorization.

2. Immediately following disclosure of the incident, malicious actors used the compromised data to launch targeted social engineering attempts against Plaintiff's business, including fraudulent communications to an employee that leveraged the compromised data.

3. Plaintiff brings this action on behalf of himself and a class of similarly situated individuals whose data was compromised due to Defendants' failure to implement reasonable data security measures, failure to vet and supervise third-party vendors, and failure to provide adequate and timely notice

## PARTIES

4. Plaintiffs Morgan D. Ross and Zebraline Group, LLC are citizens of California. Morgan D. Ross maintains an OpenAI API account, and Zebraline Group, LLC also uses OpenAI's services. Plaintiffs received notice that information associated with their accounts was included in the dataset exported from Mixpanel's systems without authorization.

5. Defendant OpenAI, L.P. is a Delaware limited partnership with its principal place of business in San Francisco, California, and is therefore a citizen of Delaware and California. OpenAI provides AI models, developer APIs, and related services nationwide

6. Defendant Mixpanel, Inc. is a Delaware corporation with its principal place of business in San Francisco, California, and is therefore a citizen of Delaware and California. Mixpanel provides analytics and telemetry services that track user interactions with websites and applications, including OpenAI's platform.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed class contains at least 100 members, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and minimal diversity exists.

8. The Court has personal jurisdiction over Defendants because they reside and conduct substantial business in this District, and a substantial portion of the events and omissions giving rise to these claims occurred here.

9. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred here.

# FACTUAL ALLEGATIONS

## A. OpenAI's Use of Mixpanel and Security Obligations

10. OpenAI provides API-based access to its AI models through its platform interface used by Plaintiff.

11. OpenAI engaged Mixpanel to provide analytics for the OpenAI API platform. Mixpanel's scripts collected and stored information about users' interactions with OpenAI's platform, including names, email addresses, approximate locations, browser and operating systems, referring websites, and internal user and organization identifiers.

12. Reasonable information security programs require, among other things, vendor due diligence and risk assessment, data minimization, robust contractual and technical safeguards, monitoring and detection of unauthorized access, least-privilege access controls, and timely incident response and notification.

13. Defendants failed to implement reasonable security controls and failed to adequately supervise Mixpanel's handling of data associated with Plaintiff's and Class Members' accounts.

## B. The Mixpanel Security Incident

14. On or about November 2025, Mixpanel determined that an attacker had gained unauthorized access to a portion of its systems and exported datasets relating to its customers, including OpenAI.

15. Mixpanel informed OpenAI that the exported data included personal and analytics information associated with users of OpenAI's API.

16. OpenAI received the affected datasets from Mixpanel and initiated an investigation into the scope and impact of the incident.

17. On or about November 26–27, 2025, OpenAI notified Plaintiff and other affected users that an attacker exported a dataset from Mixpanel's systems containing profile and analytics information associated with their OpenAI API accounts and warned that the information could be used for phishing or social engineering.

18. The impacted information includes, for each affected API user: name supplied on the account, email address, approximate city, state, and country of use, browser and operating system, referring websites, and OpenAI organization and/or user identifiers.

19. The compromised data enables highly effective phishing and impersonation attempts because it can be used to tailor communications to targets with convincing context.

## C. Plaintiff's Experience and Resulting Harms

20. Plaintiff received OpenAI's incident notice on or about November 26, 2025.

21. On the morning of November 27, 2025, Plaintiff's employee reported receiving suspicious calls and emails that appeared to be from Plaintiff but were not.

22. These fraudulent communications used personal and contextual details consistent with the types of data compromised in the Mixpanel incident and followed shortly after the disclosure.

23. Plaintiff did not initiate the communications; they were attempts by third parties to impersonate Plaintiff and obtain information from his employee.

24. As a result of Defendants' failures, Plaintiff has suffered and continues to suffer: exposure of personal and analytics data; heightened risk of phishing, impersonation, and fraud; time spent addressing and mitigating the incident; anxiety and emotional distress; and out-of-pocket expenses related to mitigation and increased security.

25. The risk to Plaintiff and Class Members is ongoing. Once exposed, personal information can be copied, circulated, and misused indefinitely.

## CLASS ALLEGATIONS

26. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of himself and a proposed class defined as: All natural persons in the United States whose personal and/or analytics data associated with an OpenAI API account was accessed, exfiltrated, or compromised in the Mixpanel security incident disclosed in or about November 2025.

27. California Subclass: All members of the Class who reside in California.

28. Excluded from the Class and Subclass are Defendants and their officers and directors, the Court and its staff, and any person who timely and validly requests exclusion.

29. The Class is so numerous that joinder is impracticable. On information and belief, thousands of OpenAI API users nationwide were affected.

30. Common questions of law and fact predominate over any individualized questions, including: whether Defendants owed duties to Plaintiff and the Class; whether Defendants failed to implement reasonable security and vendor oversight; whether the incident was caused by Defendants' acts or omissions; whether Defendants' conduct caused damages; and the appropriate measure of damages and injunctive relief.

31. Plaintiff's claims are typical of the Class because they arise from the same incident, involve similar data, and are based on the same legal theories.

32. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no conflicts with the Class and has retained experienced counsel.

33. A class action is superior to individual suits because it will promote judicial economy, avoid inconsistent outcomes, and allow recovery for claims that would be economically infeasible to litigate individually.

## CAUSES OF ACTION

### Count I: Negligence (Against All Defendants)

34. Plaintiff realleges and incorporates the preceding paragraphs.

35. Defendants owed Plaintiff and Class Members a duty to exercise reasonable care in collecting, storing, processing, and securing their personal and analytics data; to implement reasonable administrative, technical, and physical safeguards; to limit the scope and sensitivity of data shared with vendors; to conduct due diligence and oversight of vendors; and to timely detect, respond to, and notify affected individuals of unauthorized access.

36. Defendants breached their duties by failing to implement and maintain reasonable security measures; failing to adequately vet, contract with, and monitor Mixpanel; allowing unauthorized access and exfiltration of Plaintiff's and Class Members' data; and failing to provide adequate and timely notice.

37. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered injury, including exposure of personal information, increased risk of fraud and identity

theft, time and expenses for mitigation, loss of privacy, and other economic and non-economic damages.

## Count II: Invasion of Privacy / Intrusion Upon Seclusion (Against All Defendants)

38. Plaintiff realleges and incorporates the preceding paragraphs.

39. Plaintiff and Class Members had a reasonable expectation of privacy in their personal and analytics information collected in connection with the use of OpenAI's services.

40. Defendants' acts and omissions enabled unauthorized third parties to obtain this information, constituting a serious and offensive invasion of privacy that would be highly objectionable to a reasonable person.

41. Plaintiff and Class Members suffered harm as a result and are entitled to damages and appropriate equitable relief.

## Count III: Breach of Contract (Against OpenAI)

42. Plaintiff realleges and incorporates the preceding paragraphs.

Plaintiff entered into a binding agreement with OpenAI governing his use of the OpenAI API and related services. The agreement includes OpenAI's commitments to implement and maintain appropriate security measures and responsibly manage third-party vendors.

43. OpenAI breached the agreement by failing to implement and maintain reasonable security and vendor oversight, allowing unauthorized access and exfiltration of Plaintiff's and Class Members' data.

1   44. Plaintiff and Class Members suffered damages as a result of OpenAI's breach.

## Count IV: Breach of Implied Contract (Against OpenAI)

45. Plaintiff realleges and incorporates the preceding paragraphs.

46. By providing personal information to OpenAI and using its services, Plaintiff and Class Members entered into implied contracts whereby OpenAI agreed to use their information for legitimate purposes and to protect it with reasonable care.

47. OpenAI breached these implied contracts by failing to use reasonable security measures and by allowing the information to be exposed through inadequate vendor security.

Plaintiff and Class Members suffered damages as a result.

## Count V: Breach of Confidence (Against All Defendants)

48. Plaintiff realleges and incorporates the preceding paragraphs.

Plaintiff and Class Members conveyed information to Defendants in confidence and reasonably expected it would be maintained in confidence and protected from unauthorized access.

49. Defendants breached that confidence by failing to maintain appropriate safeguards and permitting disclosure and exfiltration in the incident.

Plaintiff and Class Members suffered damages as a result.

## Count VI: Unjust Enrichment (Against All Defendants)

50. Plaintiff realleges and incorporates the preceding paragraphs.

51. Defendants received benefits, including revenues and valuable data-driven insights, from Plaintiff and Class Members while failing to invest and implement adequate security and vendor oversight.

52. It would be unjust for Defendants to retain those benefits without compensating Plaintiff and Class Members for the harms caused by Defendants' acts and omissions.

## Count VII: Declaratory and Injunctive Relief (Against All Defendants)

53. Plaintiff realleges and incorporates the preceding paragraphs.

54. An actual controversy exists as to whether Defendants' current security practices and vendor oversight are adequate to protect Plaintiff's and Class Members' information.

55. Plaintiff seeks a declaration that Defendants' security and vendor management practices were and remain inadequate, and an injunction requiring Defendants to implement and maintain industry-standard security measures and vendor risk management, including at a minimum:

56. Independent, annual third-party security audits and penetration testing of Defendants and key vendors;

57. Implementation of least-privilege and zero-trust access controls across systems containing personal data;

58. Data minimization and segregation to limit vendor exposure to only what is strictly necessary;

59. Enhanced vendor due diligence, contractual security requirements, and continuous monitoring;

60. Employee security training and phishing-resilience programs;

1. Prompt, clear, and comprehensive breach notifications, and

61. At least three years of credit monitoring, identity-theft protection, and dark web monitoring for affected individuals.

## Count VIII: Violation of California Unfair Competition Law
## (Cal. Bus. & Prof. Code § 17200 et seq.) (Against All Defendants)

62. Plaintiff realleges and incorporates the preceding paragraphs.

63. Defendants' conduct as alleged herein constitutes unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business and Professions Code section 17200 et seq.

64. Defendants' acts and omissions are "unlawful" under the UCL because they violate California Civil Code section 1798.81.5 and other state and federal statutes and common-law duties requiring reasonable data security and vendor oversight, and because the same conduct that constitutes negligence, invasion of privacy, breach of contract, breach of implied contract, breach of confidence, and unjust enrichment also constitutes "unlawful" business practices.

65. Defendants' acts and omissions are "unfair" under the UCL because, among other things, they unreasonably exposed Plaintiff and Class Members to a heightened risk of phishing, impersonation, and fraud; failed to implement and maintain reasonable administrative, technical, and physical safeguards; failed to reasonably vet and supervise Mixpanel; and shifted the costs and burdens of the incident onto Plaintiff and Class Members. The gravity of these harms to Plaintiff and Class Members outweighs any countervailing benefits to Defendants or

competition, and such harms could have been reasonably avoided through readily available security and vendor-risk management measures.

66. To the extent Defendants made or disseminated statements— including in privacy policies, security statements, or other public-facing materials— that reasonably led Plaintiff and Class Members to believe their information would be protected with appropriate care and not exposed through inadequate vendor security, Defendants' practices were also "fraudulent" within the meaning of the UCL because such statements were likely to deceive reasonable consumers and account holders.

67. As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent business practices, Plaintiff and Class Members have suffered injury in fact and lost money or property, including but not limited to loss of the benefit of their bargains, loss of the value of their data, out-of-pocket expenses, and time and resources spent responding to and mitigating the consequences of the incident.

68. Plaintiff, on behalf of himself and the Class (and California Subclass), seeks restitution and disgorgement of all monies wrongfully obtained by Defendants through their unlawful, unfair, and/or fraudulent practices, as well as injunctive and declaratory relief to prevent the continuation or recurrence of such practices. The injunctive relief described in Count VII is also sought as a remedy under the UCL. Plaintiff also seeks attorneys' fees and costs as permitted by law, including under California Code of Civil Procedure section 1021.5

## **PRAYER FOR RELIEF**

69. WHEREFORE, Plaintiff, individually and on behalf of the Class and Subclass, requests that the Court enter judgment in his favor and against Defendants, and grant the following relief:

70. Certify the Class and Subclass, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

71. Award compensatory, consequential, and general damages in an amount to be proven at trial;

72. Award restitution and/or disgorgement to prevent Defendants' unjust enrichment;

73. Enter declaratory and injunctive relief requiring implementation and maintenance of adequate security and vendor oversight measures, and requiring provision of credit monitoring, identity-theft protection, and related services to Plaintiff and Class Members;

74. Award pre- and post-judgment interest at the maximum rate permitted by law;

75. Award attorneys' fees and costs as permitted by law; and

76. Grant such other and further relief as the Court deems just and proper.

77. Plaintiff demands a trial by jury on all issues so triable.

78. Dated: November 29, 2025

Respectfully submitted,

/s/ Robert Salgado
Robert Salgado, Esq.
Attorney for Plaintiff and Putative Class