UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEBRALINE GROUP, LLC, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>OPENAI, L.P., et al.,<br><br>        Defendants. | Case No.  25-cv-10312-VC<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 36, 37 |

The motion to compel arbitration is denied, and the motion to dismiss is granted. This order assumes the reader's familiarity with the facts, the relevant legal standards, and the arguments made by the parties.

1. *Motion to Compel Arbitration*. Under the doctrine of equitable estoppel, a nonsignatory to an agreement may compel a signatory to arbitration under two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract," or "(2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024).

Mixpanel argues that both circumstances are present here because Zebraline's agreement with OpenAI contained relevant provisions that bind OpenAI's affiliates. Specifically, OpenAI's "business terms" provide in relevant part:

> Neither customer nor OpenAI or either party's affiliates or licensors will be liable under this agreement for any indirect, punitive, incidental, special, consequential, or exemplary damages.

Dkt. No. 33-6 § 14.1.

> OpenAI and its affiliates and licensors make no warranty of any kind, whether express, implied, statutory or otherwise . . . or guarantee that services will meet customer's requirements or expectations, that customer content will be accurate, that defects will be corrected, or regarding any third-party services.

Dkt. No. 33-6 § 12.2.

That argument is incorrect. First, the meaning of contract terms is governed by the parties' mutual understanding at the time of contract formation, and there is no evidence here that Zebraline and OpenAI intended for Mixpanel to qualify as an "affiliate." The ordinary legal meaning of the term "affiliate" is an entity that controls, is controlled by, or is under common control with another entity (*e.g.*, a parent-subsidiary relationship). *See Toothman v. Redwood Toxicology Laboratory, Inc.*, 120 Cal. App. 5th 412, 421-22 (2026). Although OpenAI, in some vague sense, controls certain aspects of Mixpanel's conduct by virtue of having hired Mixpanel to provide services, that dynamic seems true of all client-contractor relationships, and it is implausible that the term "affiliate" should be so broadly construed as to cover all similar relationships.

Even if Mixpanel were an "affiliate," the claims brought by Zebraline against Mixpanel would not satisfy the applicable test for equitable estoppel. It is true that if Zebraline had never contracted with OpenAI in the first place, Zebraline would not have any claims against Mixpanel. But it is not enough "that the controversy would not have occurred but for the existence of the contract." *Mattson Technology, Inc. v. Applied Materials, Inc.*, 96 Cal. App. 5th 1149, 1156 (2023). The contract must be the basis for, or intimately intertwined with, the legal claims against the nonsignatory. Here, Zebraline need not rely on the terms of the contract to plead its claims against Mixpanel. The gist of Zebraline's claims is that Mixpanel acted negligently and unfairly by failing to implement sufficient safety protocols to guard against security breaches. Such duties are independent from and do not meaningfully interact with the

obligations arising out of Zebraline's agreement with OpenAI.

The contract provisions that Mixpanel points to do not show otherwise. Zebraline's claims do potentially interact with the damages provision quoted above because Zebraline seeks consequential damages. *See* Dkt. No. 33-6 § 14.1. But that overlap is not so extensive as to be "intimately connected with the obligations of the underlying agreement." *Perry-Hudson*, 2024 WL 4933332, at *3. The types of damages sought here are "incidental to" the "central allegation[s]" of the complaint. *See Herrera v. Cathay Pacific Airways Ltd.*, 104 F.4th 702, 710 (9th Cir. 2024). The provision disclaiming warranties does not apply here either. *See* Dkt. No. 33-6 § 12.2. Zebraline's claims that Mixpanel acted negligently or unfairly by failing to implement sufficient security protocols cannot be reduced to a breach of warranty claim. They arise out of Mixpanel's obligations to act fairly and with reasonable care, not out of any duty to generally satisfy consumer expectations. If Mixpanel's warranty theory were accepted, then almost any lawsuit against a service provider could be recharacterized as a breach of warranty and be compelled to arbitration on the basis of that warranty clause.

To the extent there is any lingering doubt, the lynchpin of equitable estoppel is fairness: "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.2006)). It cannot be said here that Zebraline is attempting to extract any benefit from Mixpanel on the basis of its agreement with OpenAI. It would therefore not be unfair to allow Zebraline to avoid arbitration as to Mixpanel.

2. *Motion to Dismiss*. As a threshold matter, Zebraline has Article III standing to bring this case. Zebraline alleges that it incurred costs that it otherwise would have avoided in response to the data breach incident. Dkt. No. 14 ¶ 23. That is enough to plead an injury in fact that is traceable to the alleged misconduct and redressable by a judicial remedy. *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020) (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)). The complaint

is also adequate to satisfy Rule 8. Although the complaint could have been more precisely written, the respective allegations against OpenAI and Mixpanel were clear enough to provide "fair notice of the basis" for Zebraline's claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). But Zebraline has failed to state any claims on the merits.

2a. *Negligence Claim*. To state a negligence claim, the plaintiff must allege a "cognizable injury." *See Corona v. Sony Pictures Entertainment, Inc.*, 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015). Although Zebraline's allegations about the out-of-pocket costs expended in response to the data breach are enough to establish standing, they are not particularized enough to plead "(1) the significance and extent of the compromise to [the leaked data]; (2) the sensitivity of the compromised information; (3) the relative increase in the risk of identity theft when compared to (a) Plaintiffs' chances of identity theft had the data breach not occurred, and (b) the chances of the public at large being subject to identity theft; (4) the seriousness of the consequences resulting from identity theft; and (5) the objective value of early detection." *See id.* at *4. And the allegedly increased risk of future harm caused by the data breach is not a cognizable harm. *Id.* at *4.

Even if cognizable damages were adequately alleged, Zebraline does not contest that there is generally "no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage," under California law. *Moore v. Centrelake Medical Group, Inc.*, 83 Cal. App. 5th 515, 534-35 (2022). And Zebraline has neither alleged that it suffered any physical or property damage, nor argued in its opposition that any exception to the pure economic loss rule applies here.

2b. *Breach of Confidence Claim*. To state a breach of confidence claim, a plaintiff must demonstrate that: "(1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1227 (9th Cir. 1997)

(citation modified). Here, Zebraline alleges that it provided data to OpenAI "in confidence" and that Mixpanel "knew or should have known" that the data should have been kept in confidence. Dkt. No. 14 ¶ 55-56. But Zebraline does not (and cannot) plausibly allege that it had an "understanding" with Mixpanel about the data affected by the security breach, and Zebraline does not (and cannot) plausibly allege that Mixpanel's being the victim of a security breach amounts to wrongful "disclosure" at common law.

2c. *Unjust Enrichment Claim*. To state a claim for unjust enrichment, a plaintiff must demonstrate that "the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Zebraline's allegations to that effect are entirely conclusory. *See* Dkt. No. 14 ¶¶ 60-62. And given Zebraline's existing allegations, it is highly implausible that Mixpanel unjustly enriched itself from being the victim of an alleged data breach.

2d. *UCL Claims*. To state a claim under the UCL, a plaintiff must allege an unlawful, unfair, or fraudulent business practice. Here, Zebraline has failed to state a claim under the "unlawful" prong because it has not alleged any other unlawful conduct. Zebraline's allegations as to the "unfair" prong of the UCL are similarly conclusory and lack the requisite detail from which to infer that the "the utility" of Mixpanel's conduct was sufficiently outweighed by "the gravity of the harm." *See Torres v. Botanic Tonics, LLC*, 709 F. Supp. 3d 856, 862 (N.D. Cal. 2023) (quoting *Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, 9 Cal. 5th 279, 303 & n.10 (2020)). And Zebraline's complaint lacks particularized allegations as to any misrepresentations or misleading omissions made by Mixpanel to Zebraline. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

\* \* \*

The motion to dismiss is granted with leave to amend as to the negligence and UCL claims and without leave to amend as to the breach of confidence and unjust enrichment claims. Any amended complaint is due within 14 days of this order. Otherwise, dismissal as to the

negligence and UCL claims will be with prejudice.

**IT IS SO ORDERED.**

Dated: July 6, 2026

_____
VINCE CHHABRIA
United States District Judge